IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-1999-N |
| | § | |
| FELICIA A. JAMES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Felicia A. James, Primestar Development Corp.
d/b/a Primestar Construction, and Primestar Construction Corporation's (collectively,
"Primestar") motion for leave to file compulsory counterclaim and third party claim and
leave for Court to enter amended docket control order [33], Primestar's motion to dismiss for
lack of diversity jurisdiction [26], and Plaintiff Travelers Casualty and Surety Company of
America's ("Travelers") motion for summary judgment [29].  The Court denies the motion
for leave, denies the motion to dismiss, and grants the motion for summary judgment.

### I. THE ORIGINS OF THE DISPUTE

Primestar approached Travelers requesting performance and payment bonds for
construction projects in Texas.  Primestar entered a General Agreement of Indemnity (the
"Indemnity Agreement") in favor of Travelers on December 15, 2008.  Under the terms of
the Indemnity Agreement, the indemnitors (collectively, "Primestar") agreed to "exonerate,
indemnify and save [Travelers] harmless from and against all Loss," and gave Travelers "sole

discretion" to pay or settle claims on the bonds. Pl.'s App. in Supp. of Mot. for Summ. J. 8 [31]. Primestar also agreed that if Travelers incurred loss under the bonds, "[a]n itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability." *Id*. Travelers issued performance and payment bonds on behalf of Primestar. The City of Dallas awarded Primestar the construction project to remodel the Cummings Recreation Center. The City of Dallas later terminated Primestar and asserted a claim against the performance bond. Subcontractors and suppliers of Primestar made claims against the payment bonds for unpaid work and materials on various construction projects. Travelers has incurred losses under the bonds of $938,038.43 as of February 25, 2016.

The Court issued a Scheduling Order on September 11, 2015. Under this Scheduling Order, the parties were to file motions for leave to join additional parties within 90 days and motions for leave to amend pleadings within 180 days. The Scheduling Order specifically noted that motions for leave to amend pleadings after the deadline "must show good cause pursuant to Rule 16(b)." Primestar filed its motion for leave to file compulsory counterclaim and third party claim and leave for Court to enter amended docket control order on March 15, 2016, and filed an amended motion on March 29, 2016. Primestar seeks to add the City of Dallas as a party and to bring a counterclaim against Travelers for tortious interference.

Primestar additionally filed a motion to dismiss for lack of jurisdiction on March 15, 2016. Travelers filed its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on March 18, 2016.

ORDER – PAGE 2

## II. The Court Denies leave to Amend

### A. The Standard For Leave

When the deadline for seeking leave to amend pleadings and add new parties to an action has expired, a litigant must show good cause for an amendment under Federal Rule of Civil Procedure 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Courts consider the following factors when deciding whether to allow an amendment: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Courts consider the factors holistically rather than applying them with equal weight, and one factor may be dispositive. *See Nunn v. State Farm Mut. Auto Ins. Co.*, 2011 WL 248523, at *2 (N.D. Tex. 2011).

### B. The Court Denies Leave to Amend Because Primestar Has Not Shown Good Cause

In a cursory one-page motion, Primestar states that its counsel has discovered that compulsory counterclaims and cross-claims need to be filed, and it urges the Court to grant Primestar leave to file those claims and to amend the docket control order. *See* Defs.' Mot. to Modify the Scheduling Order and Mot. for Leave 1 [33]. The September 2015 Scheduling Order gave Defendants the opportunity to join parties, bring third-party claims, and to move to amend their pleadings. Because Primestar does not attempt to explain why the time granted by the Scheduling Order was inadequate to file a third party complaint and to add counterclaims, the Court does not find good cause for modification under Rule 16(b).

Primestar previously produced a verbatim draft of the requested third party pleading, which was sent to Travelers in the summer of 2015. *See* Pl.'s Resp. to Defs.' Mot. to Modify the Scheduling Order and Mot. for Leave 10 [45]. No modifications were made to this draft before Primestar filed the present motion. Primestar does not explain why this draft was not filed on time despite having it completed on time. Primestar does not contend that they obtained any new evidence or information that could explain the delay in filing. Though Primestar switched attorneys in October 2015, Primestar's new counsel had months to conduct discovery and to seek leave to amend its pleadings.

Further, the tortious interference counterclaim does not allege nor rely on any new evidence or information. The counterclaim states that Travelers had knowledge of the contract between Primestar and the City of Dallas, that Travelers did not fully investigate the City of Dallas' claims, and that Travelers cooperated with the City of Dallas by paying the allegedly improper claims. *See* Defs.' Mot. to Modify the Scheduling Order and Mot. for Leave, Ex. 1 [33-1]. Primestar claims that these actions made it impossible for Primestar to complete performance under the contract. *See id*. Primestar had knowledge of all of these facts well before the Court's Scheduling Order. In fact, Primestar mentions these facts in its answer to Travelers' complaint when listing affirmative defenses. *See* Defs.' Original Answer 4 [10] ("The Complaint is barred because Travelers volunteered to accept the claim by the City of Dallas knowing that it had no merit and involved fraud."). Primestar fails to explain why it did not timely seek leave to amend its pleading.

ORDER – PAGE 4

While Primestar's failure to adequately explain its delay and the fact that Primestar was aware of the facts underlying these claims throughout the life of the case is dispositive[1], the remaining three factors also weigh against finding good cause for modification. Primestar does not attempt to explain why the amendment is important, which a court may weigh against granting leave. *See Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *2 (N.D. Tex. 2014). In any case, the tortious interference counterclaim against Travelers is unhelpful given that the prima facie and right-to-settle clauses in the indemnity agreement allow Travelers to settle claims at its discretion. Additionally, the third party claim against the City of Dallas appears to be unrelated to Primestar's liability under the indemnity agreement, and Primestar has not explained why the claim is necessary to the disposition of the case.

As to the third factor, the proposed claims would require Travelers to conduct additional discovery, to depose City of Dallas representatives, to negotiate with a third party, and likely to extend deadlines. Travelers has likely already incurred significant expenses in the course of the litigation. Adding a fraud claim against the City of Dallas "would require essentially restarting the lawsuit for amended pleadings, discovery, and motions," which would prejudice Travelers. *King v. Life School*, 2011 WL 5242464, at *2 (N.D. Tex. 2011).

---

[1] *See EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. 2009) ("[Movant]'s failure to provide a plausible explanation for its delay, particularly given that it had reason to anticipate seeking leave to amend its pleading, outweighs the other factors in the court's analysis.").

ORDER – PAGE 5

Finally, a continuance "would not cure the prejudice of having to conduct substantial additional discovery, thus increasing the expense and delaying final resolution of this case." *Thomas v. Brazos County*, 2007 WL 2220960 (S.D. Tex. 2007). Particularly in light of the fact that Primestar has not attempted to provide an explanation for its failure to timely move for leave to amend and add third parties, the Court does not find that there is good cause to further burden the litigation by issuing a continuance.

### III. THE COURT DENIES THE MOTION TO DISMISS

#### A. Standard for Diversity Jurisdiction

District courts have original jurisdiction of all civil actions where the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). "A federal district court may exercise original diversity jurisdiction under 28 U.S.C. § 1332 only if the plaintiffs and the defendants are completely diverse." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 812 (5th Cir. 2011). Complete diversity requires that "all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citing *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)).

For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center," which refers to "the place where a corporation's officers direct,

control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77,

92–93 (2010).  The burden of establishing subject matter jurisdiction falls on the party

seeking to invoke the court's jurisdiction.  *See St. Paul Reinsurance Co. v. Greenberg*, 134

F.3d 1250, 1253 (5th Cir. 1998).

### B. The Court Denies the Motion to Dismiss Because The
### Court Has Diversity Jurisdiction Over the Parties

It is undisputed that Travelers is incorporated in the state of Connecticut.  Primestar,

however, argues that Travelers' principal place of business is a P.O. Box in Dallas, with a

physical address of 3025 Commerce Street, also in Dallas.  Primestar provides no evidence

to support its contention, but the burden of establishing subject matter jurisdiction falls on

the party seeking to invoke the court's jurisdiction – here, Travelers.

Travelers contends that its principal place of business is in Hartford, Connecticut.

Wendy C. Skjerven, the Corporate Secretary of Travelers, provided sworn testimony that

Travelers' main headquarters is at One Tower Square in Hartford, Connecticut, and that

Travelers' officers direct, control, and coordinate Travelers' business activities at this

address.  *See* Pl.'s App. in Supp. of Resp. to Defs.' Mot. to Dismiss 3 [44-1].  Additionally,

a search of the Texas Department of Insurance lists Travelers' headquarters as One Tower

Square in Hartford, Connecticut.  *See* Pl.'s App. in Supp. of Resp. to Defs.' Mot. to Dismiss

10 [44-3].  Primestar, before filing the present motion, previously admitted that Travelers'

principal place of business is in Connecticut.  *See* Def.s' Original Answer 1 [10].  Travelers

denies that it its officers direct, control, and coordinate Travelers' business activities from

the P.O. Box that Primestar alleges is Travelers' principal place of business.  In any case, a

ORDER – PAGE 7

P.O. Box could not be a company's "nerve center" as defined by the Supreme Court. *See Hertz*, 559 U.S. at 79 (noting that if "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat . . . the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination"). The address at 3025 Commerce Street, which Primestar alleges is Travelers' physical principal place of business, is home to Champion Commercial Insurance, an insurance agency unaffiliated with Travelers. *See* Pl.'s App. in Supp. of Resp. to Defs.' Mot. to Dismiss 9 [44-3].

Travelers has met its burden of establishing that it is incorporated in the state of Connecticut, that its principal place of business is in Hartford, Connecticut, and thus that it is a citizen of the state of Connecticut. It is undisputed that Primestar is a citizen of the state of Texas. As such, this Court has diversity jurisdiction over the parties under 28 U.S.C. § 1332(a)(1).

### C. The Court Denies Travelers' Request for Attorneys' Fees and Costs

Under 28 U.S.C. § 1927, the Court may penalize an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . ." An award of attorneys' fees under section 1927 requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Lawyers Title Ins. Corp. v. Doubletree Partners, LP*, 739 F.3d 848, 871 (5th Cir. 2014). Sanctions under section 1927 are "'punitive in nature and require clear and convincing evidence' that sanctions are justified." *Id.* at 872 (quoting *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010)). Further, "[a]n

unsuccessful claim is not necessary actionable." *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1256 (5th Cir. 1991).

Travelers argues that there is no reasonable basis for Primestar having asserted that Travelers' principal place of business is in Dallas, Texas, and that counsel for Travelers informed opposing counsel that Travelers' officers operated, directed, and coordinated Travelers' activities from Hartford, Connecticut. The Court does not find that Travelers' argument is sufficient to show bad faith, improper motive, or reckless disregard of duty on the part of Primestar. Travelers additionally argues that it may receive attorneys' fees and costs pursuant to the Court's inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). The Court does not find there is sufficient evidence to show that Primestar acted in bad faith, vexatiously, wantonly, or for oppressive reasons. As such, the Court denies Travelers' request for attorneys' fees and costs.

## IV. THE COURT GRANTS TRAVELER'S MOTION FOR SUMMARY JUDGMENT

### A. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Elements of the Claim

In a diversity case, a federal court will apply state law rules on contract construction.

*Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001).

Under Texas law, a breach of indemnity agreement claim has five elements: (1) a contractual

indemnity agreement exists; (2) the agreement obligates defendants to indemnify the surety

if claims are made on the bonds issued; (3) claims were made on the bonds issued; (4) all

conditions precedent for recovery have occurred, been performed, waived or excused; and

(5) the surety has been damaged. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th

Cir. 1995).

"Under Texas law, when the terms of an indemnity agreement are clear and

unambiguous, the court will give effect to the agreement as written." *U.S. Fire Ins. Co. v.

Rey-Bach, Inc.*, 2004 WL 1836314, at *2 (N.D. Tex. 2004) (citing *Ideal Lease Serv. v.

Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983)). Primestar does not dispute that

Travelers has satisfied four of the five elements of its breach of indemnity agreement claim

– a contractual indemnity agreement exists, the agreement obligates Primestar to indemnify

Travelers in the event a claimant makes claims against the bonds issued, claims were in fact

made on the bonds issued, and Travelers has incurred damages in the undisputed amount of

$938,038.43. Primestar, in its Original Answer, generally denied that Travelers had

completed all conditions precedent for recovery. *See* Defs.' Original Answer 2 [10]. When

a party denies that a condition precedent has occurred or been performed, the party must do

so with *particularity*. FED. R. CIV. P. 9(c). "Any condition precedent to filing suit that is not

denied with particularity is deemed admitted, and it cannot be raised later in the litigation." *EEOC v. Service Temps Inc.*, 2010 WL 2381499, at *1 (N.D. Tex. 2010), *aff'd*, 679 F.3d 323, 332–33 (5th Cir. 2012). As such, Primestar may not raise the issue of failure of condition precedent at this stage in the proceedings. The Court finds that Travelers has satisfied all of the elements of its claim.

### C. The Prima Facie Clause and the Right-to-Settle Clause Preclude Defendant's Affirmative Defenses

Although Travelers has satisfied all of the elements of its breach of indemnity agreement claim, Primestar asserts a number of affirmative defenses. The prima facie and right-to-settle clauses in the Indemnity Agreement, however, preclude these defenses.

The Indemnity Agreement contains a standard prima facie clause: "An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of indemnitors' liability." Pl.'s App. in Supp. of Mot. for Summ. J. 8 [31]. Courts have consistently upheld prima facie clauses, and the clauses are not against public policy. *See Engbrock v. Federal Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967). Where an indemnity agreement contains a prima facie clause, an indemnitor "may successfully attack payments made by [the] Surety only by pleading and proving fraud or lack of good faith by [the] Surety." *Id.* In the face of a prima facie clause, indemnitors "carry a heavy burden to avoid summary judgment." *U.S. Fire Ins. Co.*, 2004 WL 1836314, at *2.

The terms of the Indemnity Agreement are clear and unambiguous; the parties agreed that an itemized, sworn statement by an employee of Travelers, or other evidence of

ORDER – PAGE 12

payment, is prima facie evidence of the propriety, amount and existence of Primestar's liability. Travelers provided an internal ledger itemizing its losses under the bond claim.[2] Thus, Travelers has provided prima facie evidence sufficient to prove Primestar's liability under the contract.

Further, the Indemnity Agreement provides Travelers the sole discretion to pay or settle claims on the bonds: Travelers "[s]hall have the right, in its sole discretion, to determine . . . whether any claim, demand or suit brought . . . in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors." Pl.'s App. in Supp. of Mot. for Summ. J. 8 [31]. "Such a contract is not against public policy, and as the parties bind themselves, so shall they be bound." *English v. Century Indem. Co.*, 342 S.W.2d 366, 369 (Tex. Civ. App. – San Antonio 1961, no writ) (internal quotation marks omitted) (upholding a clause giving the Surety the exclusive right to decide whether claims on the bond shall or shall not be defended). "When a surety is granted the contractual right to settle a claim without a judicial determination of liability, that right will be enforced as written, and the principal will be bound to reimburse the surety for the amount it has paid in settlement." *Old Republic Sur. Co. v. Palmer*, 5 S.W.3d 357, 361 (Tex. App. – Texarkana 1999, no pet.) (citing *Associated Indemnity Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 282–85 (Tex. 1998)); *see also Continental Cas. Co. v. Paredes*, 2000 WL 12903, at *5 (N.D. Tex. 2000).

---

[2]Pl.'s App. in Supp. of Mot. for Summ. J. 15–17 [31].

Given that the Indemnity Agreement contains these contractual terms, Primestar can successfully rebut a finding of liability only by pleading and proving Traveler's fraud or lack of good faith. However, "a bond surety does not owe a common law duty of good faith to its principal." *CAT Contracting*, 964 S.W.2d at 282. Additionally, the Indemnity Agreement does not contractually limit Traveler's right to reimbursement on its good faith payment or settlement of claims – to the contrary, the Indemnity Agreement expressly gives Travelers sole discretion in its payment or settlement of claims. With no contractual source for a duty of good faith, Primestar must show that Traveler's settlement and payment of claims involved fraud.

Nonetheless, Primestar asserts a laundry list of affirmative defenses purporting to defeat Traveler's motion, most of which are inapplicable to the case at hand. Primestar argues that Traveler's claim is barred by the doctrines of unclean hands, laches, duress, release, waiver, acquiescence, ratification, prevention, negligence, fraud, failure of consideration, set-off, unconscionability, substantial and material breach, failure to act equitably, failure to mitigate, and recoupment.

The prima facie and right-to-settle clauses in the Indemnity Agreement bar the doctrines of unclean hands, acquiescence, negligence, and failure to act equitably, as these clauses expressly allowed Travelers to determine in its sole discretion whether and when to settle or pay claims. "Common-law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication." *Old Republic*, 5 S.W.3d at 361

ORDER – PAGE 14

(citing *CAT Contracting*, 964 S.W.2d at 285). The doctrines of unclean hands, acquiescence, negligence, and failure to act equitably all assume that Travelers owed a duty to the indemnitors to act reasonably, but the Indemnity Agreement expressly allows Travelers to handle claims at its sole discretion. Similarly, the defense of mitigation does not apply because Travelers was within its rights under the right-to-settle clause to settle or pay claims in full at its discretion, whether or not this it was reasonable to do so. *See id*.

The doctrines of set-off, breach, and recoupment are irrelevant in this case; Primestar does not provide any evidence that Travelers breached the contract, and the Court holds that Travelers did not breach the contract by exercising its right to pay or settle claims. As Primestar has also failed to provide any evidence that Travelers waived its right to indemnification, executed a release, or modified the contract in any other way after signing, the doctrines of waiver, release, and ratification are similarly irrelevant. Further, as Travelers has not asserted that Primestar failed to perform any condition precedent to performance, the doctrine of prevention is inapplicable.

The defense of failure of consideration is factually inapplicable. Travelers gave consideration for the agreement in the form of provision of performance and payment bonds.

The defense of duress requires: "(1) a threat to do something that the threatening party has no legal right to do; (2) some illegal exaction or fraudulent deception; (3) the restraint is imminent and such as to destroy a person's free will without adequate means of protection; and (4) the claimant's financial distress was caused by the party accused of duress." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

Because Travelers and Primestar entered into their agreement willingly, and because Travelers was within its rights to pay or settle claims at its discretion, the defense of duress does not apply here.

In Texas, "state law requires the party claiming unconscionability to bear the burden of establishing both procedural and substantive unconscionability." *Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 856 (N.D. Tex. 2014). Primestar, in its interrogatory response addressing unconscionability, argues only that Travelers was complicit in fraud in its settlement and payment of claims. Texas courts have upheld prima facie and right-to-settle clauses, and in any case, Primestar fails to provide any evidence of either procedural or substantive unconscionability. As such, Primestar does not meet its burden, and unconscionability fails as a defense.

The two essential elements of laches are: "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (citing *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)). Laches, in the absence of extraordinary circumstances, generally "will not bar a suit short of the period set forth in the limitation statute." *Id.* (citing *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex. 1968)). In Texas, the statute of limitations for a breach of contract claim is four years, which accrues at the time the contract is breached. Travelers sued for indemnification on January 13, 2014,[3] which is well within the statute of limitations.

---

[3] *See* Pl.'s Original Compl., Ex. C [1].

Primestar does not assert any extraordinary circumstances, and as such, the Court finds no reason why the doctrine of laches should bar this suit.

### D. Defendants Fail to Prove Fraud by the Plaintiff

Even in the face of a contract containing prima facie and right-to-settle clauses, Primestar may avoid liability under the contract if Travelers engaged in fraud in its settlement and payment of claims. Texas courts have held that fraud, or "bad faith," in the context of a surety agreement, "means more than merely negligent or unreasonable conduct; it requires proof of an improper motive or willful ignorance of the facts." *CAT Contracting*, 964 S.W.2d at 285. A surety need not have conducted a "reasonable" investigation prior to a determination that claims should be settled or paid. *Id*.

Primestar asserts that the City of Dallas fraudulently reduced the time extension granted to Primestar to complete its project, that Travelers was aware of this fraud, and that Travelers nonetheless paid the claim. *See* Defs.' Br. in Resp. to Mot. for Summ. J. 13 [42]. Travelers acted within its rights to settle and pay claims at its discretion, without a judicial determination of liability. At most, Travelers acted negligently in paying the claim without a more thorough investigation. Even if Travelers acted negligently, negligence does not constitute fraud.

In its interrogatory response addressing fraud, Primestar additionally asserts that Travelers was complicit in fraud because it had knowledge that "the existing condition of the HVAC units, thermostat, and duct work was minimally to non-functioning [sic] prior to Primestar having taken possession of the building." *See* Pl.'s App. in Support of Mot. for

ORDER – PAGE 17

Summ. J. 22–23 [31].  Primestar also asserts that Travelers was aware that the City of Dallas was attempting to unduly influence Primestar into "complying with additional work for free." *Id*.  Primestar provides no evidence in support of these claims, nor does Primestar explain how this alleged knowledge constitutes fraud that would release Primestar from liability.

As such, Primestar has not proven fraud on the part of Travelers to rebut the elements of Travelers' claim for breach of indemnity agreement.  Travelers has established all of the elements of its claim.

CONCLUSION

Based on the foregoing, the Court denies the motion for leave to file and enter amended docket control order, denies the motion to dismiss, grants Traveler's motion for summary judgment, and awards judgment for Travelers in the amount of $938,038.43, plus prejudgment interest in the amount of $61,807.74.[4]

---

[4]In calculating interest on state law claims, the Court looks to state law.  *Canal Ins. Co. v. First Gen. Ins. Co.*, 901 F.2d 45, 47 (5th Cir. 1990).  Under Texas law, prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (internal quotation marks and citation omitted).  Equity supports an award of prejudgment interest on Traveler's breach of indemnity agreement claim.  *See, e.g., Arch Ins. Co. v. WM Masters & Associates, Inc.*, 2013 WL 145502, at *5 (N.D. Tex. 2013) (awarding prejudgment interest on damages resulting from breach of indemnity agreement).  In Texas, prejudgment interest is set at the greater of the prime rate as published by the Board of Governors of the Federal Reserve System, or 5%.  *See Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011) (citing *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 255 (Tex. 2008)).  Given that the current prime rate is 3.50%, the Court assesses prejudgment interest at an annual rate of 5% from the date suit was filed until the date preceding this final judgment.

Signed October 5, 2016.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 19